Patsy J. JORDAN and Melody K. Jordan, his wife, and Linda Lutes, for themselves and all others similarly situated, Appellants,

v.

FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS, Fayette County Assessor's Office, Fayette County, Sean M. Cavanaugh, Vincent A. Vicites, Harry E. Albert, and James A. Hercik.

Commonwealth Court of Pennsylvania.

Argued May 9, 2001.

Decided Aug. 20, 2001.

David B. Rodes, Pittsburgh, for appellants.

John S. Cupp, Jr., Uniontown, for appellees.

Before: DOYLE, President Judge, COLINS, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

LEADBETTER, Judge.

This is an appeal from the order of the Court of Common Pleas of Fayette County sustaining preliminary objections to a class action suit challenging the assessment methods used in Fayette County. Plaintiffs/appellants are taxpayers Patsy J. Jordan, his wife Melody K. Jordan, and Linda Lutes.

Taxpayers commenced this action by complaint filed against the County, the County's Board of Assessment Appeals (Board) and Assessor's Office, the Fayette County Commissioners in their capacity as members of the Board, and James A. Hercik in his capacity as Chief Assessor. Taxpayers aver that the Assessor's Office and the Board have assessed properties purchased or improved since the mid–1970s using a method different from that used on other properties which have not been purchased or improved since that time. Taxpayers claim that this use of different assessment methods has created non-uniform assessments on real property and has caused owners of recently purchased or improved properties to pay a disproportionate share of property taxes. Taxpayers allege that the defendants concealed their use of different assessment methods, preventing taxpayers from being able to discover their injury.

Based on these averments, taxpayers brought their suit as a class action on behalf of owners of properties purchased or improved since the mid–1970s, asserting claims under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983[1] and Article VIII, Section 1 of the Pennsylvania Constitution[2] and seeking injunctive and monetary relief. Defendants filed preliminary objections in the form of a motion to dismiss for lack of jurisdiction, a demurrer, and a motion for more specific pleading. The trial court granted defendants' preliminary objections, dismissing on the ground that it lacked subject matter jurisdiction.[3]

---

1. Title 42 U.S.C. § 1983 creates a remedy for violations of federal rights committed by persons acting under color of state law. Section 1983 provides, in pertinent part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Article VIII, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

On appeal, taxpayers argue that (1) they should not be barred from pursuing their Section 1983 action in the trial court because the statutory process provided by the Fourth through Eighth Class County Assessment Law [4] (FECCAL) is constitutionally inadequate and (2) their challenge under Article VIII, Section 1 of the Pennsylvania Constitution is such that they should be excused from exhausting their remedies under the statutory review procedure. We find neither argument persuasive and, therefore, affirm.

In *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), the United States Supreme Court held that plaintiffs challenging state taxes have no viable cause of action under Section 1983 if adequate state law remedies exist. *Id.* at 588, 115 S.Ct. at 2351. In *Murtagh v. County of Berks*, 715 A.2d 548 (Pa.Cmwlth.1998)(*en banc*),[5] as in the instant case, taxpayers challenged the use of a different assessment method for recently purchased properties. Relying on *National Private Truck Council*, we concluded that "because Pennsylvania's administrative process for challenging tax assessments provides Taxpayers with an adequate state remedy, the trial court did not have subject matter jurisdiction to consider Taxpayers' Section 1983 action absent exhaustion of their administrative remedies." *Id.* at 552.

■ Taxpayers attempt to distinguish the instant case from *Murtagh* by arguing that the statutory remedies available to them under FECCAL differ from those available to the taxpayers in *Murtagh* under the Third Class County Assessment Law (TCCAL).[6] We disagree. FECCAL and, where not inconsistent, the General County Assessment Law [7] (GCAL) provide taxpayers administrative remedies essentially identical to those found constitutionally adequate in *Murtagh*. FECCAL creates a board of assessment appeals in each county which must hear and determine appeals from assessments. 72 P.S. §§ 5453.301–5453.302; 72 P.S. § 5020–511. Under Section 701 of FECCAL, the board must notify each owner subject to changes in assessment. 72 P.S. § 5453.701(a). Any person aggrieved by any assessment may appeal to the board for relief. 72 P.S. § 5453.701(b). When a property owner files such an appeal, the board must notify each person and each taxing district which has an interest. 72 P.S. § 5453.701(c)(4). A person aggrieved by the order of the board may appeal to the court of common pleas for a *de novo* proceeding, with further appeals available to the Commonwealth and Supreme Courts. 72 P.S. § 5453.704; 42 Pa.C.S. § 762(a)(4).

Nonetheless, taxpayers argue that FECCAL does not contain a provision mandating refunds for past overpayments resulting from spot reassessments comparable to that contained in Section 7.1 of TCCAL, 72 P.S. 5348.1. Taxpayers contend that

---

**3.** In so concluding, the trial court only specifically addressed the first count of taxpayers' complaint, brought under the Equal Protection Clause and Section 1983.

**4.** Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §§ 5453.101–5453.706.

**5.** In *Murtagh,* we concluded that the United States Supreme Court's opinion in *National Private Truck Council* superseded the Pennsyl-

vania Supreme Court's decision in an earlier round of the *Murtagh* litigation, *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), *cert. denied,* 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994).

**6.** Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §§ 5342–5350

**7.** Act of May 22, 1933, P.L. 853 *as amended,* 72 P.S. §§ 5020–601–5020–602

since there is no provision for the refund of past overpayments resulting from spot reassessments, FECCAL does not afford taxpayers plain, adequate, and complete relief. Lacking adequate statutory relief, taxpayers argue that they are entitled to bring a Section 1983 action without first appealing to the Board. We find this argument unpersuasive.

Notably, our decision in *Murtagh* made no mention of the spot reassessment provision of TCCAL which specifically entitles a property owner to a refund of excess tax payments where the Board finds that the owner has been subjected to a spot reassessment. Nevertheless, we note that taxpayers are not without recourse for overpayment of taxes. If taxpayers' appeal is found meritorious, the board is empowered by the GCAL to "grant such relief as to them shall appear just and reasonable." 72 P.S. § 5020–511. Additionally, Section 703.3 of FECCAL provides that "whenever through mathematical or clerical error an assessment is made more than it should have been, and taxes are paid on such incorrect assessment, the Board, upon discovery of such error and correction of the assessment shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer or taxpayers for a period not in excess of six years from the date of the application for refund or discovery of such error by the board." 72 P.S. § 5453.703c.[8] Finally, under Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b, where a

taxpayer has paid taxes to which a political division is not entitled, and no other remedy exists, the taxpayer may file a claim for refund of the payment. 72 P.S. § 5566b(a). Upon the filing of such a claim, the political subdivision must refund the taxes to which it is not legally entitled. 72 P.S. § 5566b(b). In the event that the political subdivision refuses to issue a refund, the aggrieved taxpayer has the right to bring suit for the recovery of such taxes. 72 P.S. § 5566c. We conclude that these statutory remedies adequately address taxpayers' interest in obtaining redress for the payment of excess taxes, and therefore, that the trial court properly sustained the preliminary objection to taxpayers' Section 1983 claim.

 Taxpayers next complain that the trial court, by addressing only the Section 1983 claims in its opinion, simply ignored their claim under the uniformity clause of the Pennsylvania Constitution. Nonetheless, the court dismissed the entire complaint, and it is clear that it did so based upon the preliminary objection that equity should not exercise jurisdiction to address a claim for which there is an adequate statutory remedy.[9] It is equally clear that common pleas did not err in this regard. *See Rochester & Pittsburgh Coal Co. v. Indiana County Bd. of Assess. and Revision of Taxes,* 438 Pa. 506, 266 A.2d 78 (1970). As our Supreme Court noted in *Shenango Valley Osteopathic Hospital v.*

---

**8.** As support for their position that they are without remedy for past overpayments, taxpayers cite an outdated version of Section 703.3, which has since been rewritten by the 1984 amendment. The earlier version provided that the Board might order a refund when through error an assessment is made more than fifty percent greater than it should have been.

**9.** As our Supreme Court noted in *Shenango Valley Osteopathic Hospital v. Dept. of Health,*

499 Pa. 39, 451 A.2d 434 (1982), litigants and courts, including the parties and trial court here, have often mischaracterized this rule as a "lack of jurisdiction," thereby confusing the "judge made rule of exhaustion of administrative remedies with subject-matter jurisdiction conferred by the legislature or inherent in the common law." *Id.* at 46, n. 7, 451 A.2d at 437, n. 7.

*Department of Health,* 499 Pa. 39, 451 A.2d 434 (1982):

> The doctrine of exhaustion of administrative remedies as a restraint upon the exercise of a court's equitable powers not only reflects a recognition of the general assembly's directive of strict compliance with statutorily-prescribed remedies, it also acknowledges that an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded.
>
> * * *
>
> The premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area.

*Id.* at 47, 451 A.2d at 438.

Taxpayers cite our Supreme Court's decision in *Borough of Green Tree v. Board of Property Assessments, Appeals & Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974)(Pomeroy, J., plurality opinion), as support for their position that statutory administrative remedies are inadequate as a matter of law where a claim is asserted under Article VIII, Section 1 of the Pennsylvania Constitution. However, this argument ignores the precise distinction drawn in that case between a substantial "frontal attack" on the constitutionality of a tax statute (as in *Borough of Green Tree* ) and a constitutional challenge to the *application* of the statute (as in *Rochester & Pittsburgh Coal* ). In the former situation, exercise of equity jurisdiction is appropriate; in the latter, it is not. This is because, "the more direct the attack on the statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency charged with enforcement of the act, nor require, for informed adjudication, the factual fabric which might develop at the agency level." *Borough of Green Tree,* 459 Pa. at 281, 328 A.2d at 825. Thus, "[w]hen a constitutional attack is brought against the application of a tax statute, the board is the proper authority to hear the challenge." *Consol. Gas Supply Corp. v. County of Clinton,* 80 Pa.Cmwlth. 10, 470 A.2d 1113, 1115 (1984)(*en banc* ).

In light of the foregoing, we affirm.

### ORDER

AND NOW, this 20th day of August, 2001, the order of the Court of Common Pleas of Fayette County in the above captioned matter is AFFIRMED.