**Linda LUTES, Appellant**

v.

**FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.

Decided Nov. 30, 2007.

Jason T. Shipp and Bradley R. Andreen, Pittsburgh, for appellant.

John S. Cupp, Jr., Uniontown, for appellee.

BEFORE: COLINS, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

We are asked to consider whether retroactive' assessment appeals are a lawful means to obtain refunds for overpayment of property taxes under an allegedly unconstitutional dual assessment scheme employed by Fayette County (County) from the mid–1970s until 2003. Linda Lutes challenges an order of the Fayette County Common Pleas Court (trial court) denying her request that the Fayette County Board of Assessment Appeals Board (Board) award her, and other similarly situated property owners, retroactive tax refunds to correct past non-uniform as-

sessments. For the following reasons, we affirm.

## I. Factual and Procedural History

### A. Factual History

In its decision, the trial court noted the following facts. In or before 1958, the County completed a county-wide reassessment, adopted a base year market value system and created the 1958 rate book (1958 Assessment Method). Between 1958 and the mid–1970s, County properties were assessed in a uniform manner using the 1958 Assessment Method.

However, beginning in the mid–1970s, the Board began using a new assessment method (New Assessment Method) for newly purchased or improved properties (New Properties). Notwithstanding, the Board continued to apply the 1958 Assessment Method to properties that were not purchased or improved after the mid–1970s (Old Properties).

The New Assessment Method resulted in substantially higher assessments than the 1958 Assessment Method on properties of similar market values. As such, the use of different assessment methods for New Properties and Old Properties created non-uniform assessments of real property in the County. As a consequence, owners of New Properties paid a disproportionate share of the County's property taxes.

Ultimately, the County performed another county-wide reassessment in 2003.

### B. Procedural History

#### 1. Prior Action

In 1999, Lutes, and Patsy and Melody Jordan (collectively, taxpayers) brought a class action civil rights case seeking injunctive and monetary relief against the County, the Board and the Assessor's Office. On behalf of all "spot reassessed" owners of New Properties, taxpayers asserted equal protection claims under the Fourteenth Amendment,[1] 42 U.S.C. § 1983;[2] and Article VIII, § 1 of the Pennsylvania Constitution (Uniformity Clause).[3] See Jordan v. Fayette County Bd. of Assessment Appeals, 782 A.2d 642 (Pa.Cmwlth.2001).

In Jordan, the trial court sustained the Board's preliminary objections and dismissed taxpayers' class action civil rights complaint on the ground the court lacked subject matter jurisdiction because taxpayers did not exhaust their administrative appeals. On appeal to this Court, taxpayers argued they should have been permitted to pursue their civil rights action because their remedies under The Fourth through Eighth Class County Assessment Law (County Assessment Law)[4] were constitutionally inadequate. They further argued their Uniformity Clause challenge is

1. The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

2. 42 U.S.C. § 1983 provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

3. The Uniformity Clause provides, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax...." PA. CONST. art. VIII, § 1.

4. Act of May 21, 1943, P.L. 571 as amended, 72 P.S. §§ 5453.101–5453.706.

such that they should be excused from exhausting their statutory remedies.

In *Jordan* this Court cited *Murtagh v. County of Berks*, 715 A.2d 548 (Pa.Cmwlth. 1998) and held that the existence of adequate state law remedies barred taxpayers from maintaining their equal protection challenge under 42 U.S.C. § 1983.[5] We further held the existence of adequate statutory remedies made it inappropriate for this Court to exercise equity jurisdiction over taxpayers' Uniformity Clause challenge.

However, in Jordan, we noted remedies exist for overpayment of taxes. In particular, we cited provisions in three county assessment and tax collection laws. First, pursuant to Section 511 of the General County Assessment Law (General Assessment Law),[6] we recognized that if taxpayers' appeal is found meritorious, the As-sessment Board is empowered to "grant such relief as to them shall appear just and reasonable." 72 P.S. § 5020–511(a).

Second, we observed 703.3 of the County Assessment Law:[7]

Whenever through mathematical or clerical error an assessment is made more than it should have been, and taxes are paid on such incorrect assessment, the board, upon discovery of such error and correction of the assessment shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer or taxpayers for a period not in excess of six years from the date of application for refund or discovery of such error by the board.

Third, we cited Sections 1 and 2 of the Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. §§ 5566b[8] and 5566c[9] (Refund

---

**5.** In *Murtagh*, we applied the U.S. Supreme Court's decisions in *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) (plaintiffs seeking injunctive or declaratory relief in state tax cases under 42 U.S.C. § 1983 lack a cognizable case of action where adequate state law remedies exist) and *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (federal courts directed to abstain from hearing state tax challenges for monetary damages under 42 U.S.C. § 1983; actions for monetary damages are as intrusive to a state's revenue collection system as are equitable claims, and are exacerbated by the parties' failure to invoke adequate statutory remedies before asserting a Section 1983 claim). *See also Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003 (2006) (Section 1983 monetary damages are unavailable in tax cases brought in state court when an adequate legal remedy exists).

**6.** Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1–5020–602.

**7.** Added by the Act of September 28, 1965, P.L. 550, *as amended*, 72 P.S. § 5453.703c.

**8.** Section 1 of the Refund Act, 72 P.S. § 5566b, relevantly provides:

(a) Whenever any person ... of this Commonwealth has paid ... into the treasury of any political subdivision, directly or indirectly ... any taxes of any sort ... or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes ... or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.

(b) The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise, for recovery of moneys paid as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or un-

Act). In *Jordan*, we interpreted the Refund Act as providing the following remedies:

> where a taxpayer has paid taxes to which a political division is not entitled, and no other remedy exists, the taxpayer may file a claim for refund of the payment. [Section 1(a),] 72 P.S. § 5566b(a). Upon the filing of such a claim, the political subdivision must refund the taxes to which it is not legally entitled. [Section 1(b),] 72 P.S. § 5566b(b). In the event that the political subdivision refuses to issue a refund, the aggrieved taxpayer has the right to bring suit for the recovery of such taxes. [Section 2,] 72 P.S. § 5566c. We conclude that these statutory remedies adequately address taxpayers' interest in obtaining redress for the payment of excess taxes, and therefore, that the trial court properly sustained the preliminary objection to taxpayers' Section 1983 claim.

*Jordan,* 782 A.2d at 645.

## C. Current Action

In July 2002, Lutes filed an appeal with the Board challenging her 2003 assessment. Primarily, however, Lutes' appeal, styled a "class action appeal," sought retroactive relief for past overpayments based on alleged over-assessments under the County's dual assessment scheme. Lutes' property was assessed under the New Assessment Method, not the 1958 Assessment Method. The Board lowered Lutes' 2003 assessment, but denied her claim for retroactive relief.

Lutes appealed to the trial court, again styling her appeal as a class action. Lutes sought: class action certification, including appointment of herself as representative of the class; a new review of the Board's decision; an order directing the Board to award Lutes and the class retroactive refunds and appropriate interest; and costs and expenses, including attorney's fees. The Board filed preliminary objections to Lutes' notice of appeal, which the trial court overruled. Thereafter, Lutes' appeal lay dormant for two years, until the County Prothonotary, acting pursuant to Pa. R.C.P. No. 230.2, sent Lutes a notice of proposed termination due to inactivity.

In response, Lutes filed a statement of intention to proceed and a petition for rule to show cause why her requested relief should not be granted. The Board responded to Lutes' petition with an answer and new matter.

In November 2005, the trial court held a hearing on Lutes' petition. Lutes presented testimony from the County's Chief Assessor since 1988, James A. Hercik (Chief Assessor). He testified, prior to the 2003 reassessment, the County used three different assessment methodologies. Notes of Testimony at 23, 27; Reproduced Record (R.R.) at 79a, 83a. However, Chief Assessor also testified the County employed equalization factors to maintain uni-

---

der an interpretation of such provision subsequently held by such court, to be erroneous.

9. *Section 2 of the Refund Act, 72 P.S. § 5566c, provides:*
   In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, or refusal or failure to pay interest as required by section 1, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, interest, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located.

formity. *Id.* at 28–29, 38; R.R. at 84a–85a, 94a.

### D. Trial Court's Decision

Ultimately, the trial court denied Lutes' petition for rule to show cause. At hearing, the trial court remarked that it did not interpret our decision in *Jordan* as saying Lutes could file a retroactive appeal. Rather, the trial court interpreted *Jordan* as directing Lutes to apply for a refund under the provisions cited in that case.

In its decision, the trial court noted the County underwent a county-wide reassessment in 2002, which became effective for the 2003 tax year. Thus, at the time of Lutes' appeal, no property owners were being assessed under either the 1958 Assessment Method or the New Assessment Method. Citing Section 701(b) of the County Assessment Law, the trial court noted the Board could not make changes to the valuation of property for years preceding the assessment for the 2003 tax year. Section 701(b), 72 P.S. § 5453.701(b), relevantly provides (with emphasis added):

> Any person aggrieved by any assessment whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest therein, may appeal to the board for relief. *Any person or such taxing districts desiring to make an appeal shall, on or before the first day of September, file with the board an appeal* ....

The trial court further noted that if no appeal is taken from an assessment of taxes within the time allowed by law, the assessment becomes binding and conclusive. *See Lincoln Phila. Realty Assocs. I*

*v. Bd. of Revision,* 563 Pa. 189, 758 A.2d 1178 (2000); *Petition of Mausoleum Constr. Co.,* 55 Pa.Cmwlth. 504, 423 A.2d 809 (1980). Moreover, this constitutes a limit on subject matter jurisdiction. *Lincoln Phila. Realty Assocs. I.* Where taxpayers fail to timely appeal under the applicable county assessment law, their statutory appeals are lost. *Id.* "Such a result 'is salutary because the revenue base of taxing bodies should not be left open indefinitely' to retrospective claims." *Id.* at 211, 758 A.2d at 1190 (citations omitted).

The trial court further determined the Board could not provide Lutes retroactive relief under Section 511 of the General Assessment Law, 72 P.S. § 5020–511. "Since [Lutes] failed to bring her claims regarding the New Assessment Method before the Board during the time prescribed by law, the assessments are binding and conclusive." Trial Court's Op. at 7. "As such, the Board cannot make changes to the valuation of property for years preceding the assessment for the 2003 tax year." *Id.*

Additionally, the trial court determined Section 703.3 of the County Assessment Law, 72 P.S. § 5453.703c, is inapplicable because it limits *refunds* to a maximum of six years. Therefore the Board could not order refunds dating back beyond six years. More importantly, Section 703.3 of the County Assessment Law does not authorize retroactive assessment appeals.

■ Accordingly, in November 2006, the trial court denied Lutes' petition for rule to show cause. On Lutes' motion, the trial court entered a final order dismissing her appeal. Lutes' appeal here followed.[10]

---

10. In tax assessment appeals, appellate review is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Beattie v. Allegheny County,* 589 Pa. 113, 907 A.2d 519 (2006).

## II. Current Appeal

### A. Arguments

Lutes asserts the trial court erred as a matter of law in precluding her appeal based solely on Section 511 of the General Assessment Law, 72 P.S. § 5020–511. Section 511(a) provides (with emphasis added):

At the time and place fixed for the appeal, whether at a triennial or inter-triennial assessment, the commissioners, acting as a board of revision, or the board for the assessment and revision of taxes, shall attend and hear all persons who may apply for redress, and grant such relief as to them shall appear just and reasonable: Provided, That the commissioners, acting as a board of revision, or the board for the assessment and revision of taxes, *shall not make any allowance or abatement in the valuation of any real estate, in any other year than that in which the triennial assessment is made* ....

72 P.S. § 5020–511(a).

Lutes argues Section 511(a), which prohibits the Board from making any allowance or abatement in the valuation of real estate, except in the year of a triennial assessment, is obsolete because triennial assessments in fourth class counties were abolished by the legislature in 1943. *See* Section 601 of the County Assessment Law, 72 P.S. § 5453.601 (triennial assessments abolished; chief assessor shall annually prepare assessment roll). Therefore, Lutes asserts the trial court erred by relying on Section 511(a) of the General Assessment Law.

Additionally, Lutes asserts the trial court utterly ignored this Court's decision in *Jordan,* which identified Section 511 of the General Assessment Law, Section 703.3 of the County Assessment Law, and the Refund Act as available state law remedies to challenge the County's allegedly illegitimate assessment scheme.[11] If the trial court's decision is correct, Lutes argues, she has no state law remedy for years of unfair taxation. Therefore, Lutes asserts a 42 U.S.C. § 1983 action is appropriate.

The Board counters, the trial court, in discussing Section 511(a) of General Assessment Law, merely addressed Lutes' argument that the section applied here. Noting the County Assessment Law applies to assessments and assessment appeals in Fayette County, a fourth class county, the Board asserts the trial court correctly explained why Section 703.3 of the County Assessment Law, cited by Lutes, is improper.

■ The Board further contends Lutes, who is seeking monetary compensation for overpaid past taxes, failed to join the taxing bodies as indispensable parties. *See* Pa. R.C.P. No. 1032 (failure to join indispensable party deprives court of subject matter jurisdiction); *Polydyne, Inc. v. City of Phila.,* 795 A.2d 495 (Pa.Cmwlth. 2002) (same). Failure to join indispensable parties may be raised at any time. *Id.*

■ The Board also argues equity jurisdiction over challenges to tax assessments is extremely limited in Pennsylvania. Equity jurisdiction will only attach where the statutory remedy is inadequate or the pur-

---

**11.** In *Jordan,* we noted that the "[County Assessment Law] does not contain a provision mandating refunds for past over payments resulting from spot reassessments...." 782 A.2d at 644. In contrast, Section 7.1 of the Third Class County Assessment Law, Act of June 26, 1931, P.L. 1379, *as amended,* added by the Act of July 19, 1991, P.L. 91, 72 P.S. § 5348.1, specifically prohibits spot reassessments and provides for refunds where spot reassessments were made.

suit of the statutory remedy would cause irreparable harm to the party. *Borough of Green Tree v. Bd. of Prop. Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974). In *Borough of Green Tree,* our Supreme Court established a two-pronged test for equity jurisdiction: the challenging party must raise a substantial question of constitutionality and the absence of an adequate statutory remedy. *See also Beattie v. Allegheny County,* 589 Pa. 113, 907 A.2d 519 (2006); *Kowenhoven v. County of Allegheny,* 587 Pa. 545, 901 A.2d 1003 (2006).

## B. Discussion

■ Initially, we agree with the Board that the trial court did not base its decision solely on Section 511 of the General Assessment Law, which is a general assessment law. Rather, the trial court observed Lutes' retroactive appeals of previous assessments are not permitted under either Section 511 of the General Assessment Law or Section 701(b) of the County Assessment Law. Because Lutes failed to challenge any assessments under the New Assessment Method before the Board during the time prescribed by law, those assessments are binding and conclusive. *See* Trial Court's Op. at 7. Consequently, the Board cannot change the valuation of Lutes' property for those years. *Id.*

■ As to the effect of our decision in *Jordan,* the trial court rejected Lutes' assertion that *Jordan* authorized retroactive assessment appeals. The proper remedy for past overpayments, the trial court discerned, is a request for refunds under the statutes cited in *Jordan,* not a retroactive assessment appeal. This was a correct interpretation of *Jordan.*

Moreover, for the following reasons, the three statutes referenced in Jordan cannot form the basis for the retroactive tax refunds Lutes now seeks. First, Section 511 of the General Assessment Law concerns assessment appeals, not refunds. Although Section 511(a) provides the assessment board "may hear all persons who apply for redress; and grant such relief as to them shall appear just and reasonable," this is limited to the current assessment year. 72 P.S. § 5020–511(a).

■ Second, Section 703.3 of the County Assessment Law, 72 P.S. § 5453.703c, pertaining to errors in assessments and refunds, applies only to mathematical or clerical errors, not to substantive validity challenges.

■ Third, the Refund Act limits refunds to written claims filed with the political subdivision that received the taxes into its treasury within three years of payment. *See* Section 1(a), 72 P.S. § 5566b(a). If the authorities in that political subdivision refuse or fail to make the refund, Section 2 of the Act authorizes a civil action in common pleas court for recovery of the refund. 72 P.S. § 5566c. Here, however, Lutes did not file a request for refunds from the County pursuant to the Refund Act.[12] Rather, she sought to retroactively appeal her assessments to the time of purchase in 1989–90. *See Stranahan v. County of Mercer,* 697 A.2d 1049 (Pa.Cmwlth.1997) (narrowly construing statutory procedures of Refund Act, failure to file for refund with political subdivision that received the taxes precludes later suit to recover overpayments of tax).

■ The trial court did not err in determining county assessment laws do not permit such retroactive assessment appeals. "Where, as here, taxpayers have failed to

---

**12.** We note that more than three years have passed since the last of the challenged assessments. As such, a cause of action under the Refund Act is no longer available.

file timely appeals as prescribed by the applicable county assessment law, such statutorily prescribed remedy is 'lost beyond recall.'" *Lincoln Phila. Realty Assocs. I.*, 563 Pa. at 210–211, 758 A.2d at 1190 (citation omitted). This is a limitation on subject matter jurisdiction and, therefore, neither a common pleas court nor an appellate court can provide relief. *Id.*

### III. Conclusion

In short, we discern no error in the trial court's decision. Although the statutes cited in Jordan provide for tax refunds, they do not authorize retroactive assessment appeals. *Lincoln Phila. Realty Assocs. I.* As a result, the Board cannot change the valuation of Lutes' property for the years at issue. *Id.* Accordingly, we affirm the trial court's order.[13]

### *ORDER*

AND NOW, this 30th day of November, 2007, the order of the Court of Common Pleas of Fayette County is **AFFIRMED.**

---

**13.** Additionally, although Lutes did not specifically raise a class action issue on appeal, the Board, as appellee, attacks Lutes' class action request as improper for several reasons. Lutes did not seek class certification before the Board. Further, before the trial court, Lutes failed to comply with the procedural requirements for filing class actions. *See* Pa. R.C.P. Nos. 1701–11. Our review of the record indicates Lutes did not properly plead a class action; she did not file a proper class action complaint; and she did not move for certification or present evidence supporting a class action determination. In any event, requests for tax refunds cannot be pursued by class action. *Israelit v. Montgomery County,* 703 A.2d 722 (Pa.Cmwlth.1997).