IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downingtown Area School      :
District,      : No. 2182 C.D. 2014
     : Argued: October 5, 2015
          Appellant    :
     :
        v.      :
     :
Chester County Board of      :
Assessment Appeals and      :
SPC 2001A-CSF-67 LLC      :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge[1]
             HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN             FILED: January 19, 2016


       Downingtown Area School District (District) appeals from the October 30, 2014, order of the Court of Common Pleas of Chester County (trial court) denying District's request to change the assessed value of property (Property) owned by SPC 2001A-CSF-67 LLC (SPC) and leased to Lionville CVS, Inc. (CVS) (together, Taxpayers). The trial court determined that the assessed value of the Property was $1,244,900 for tax year 2013, $1,336,440 for tax year 2014, and $1,336,440 for tax year 2015. We affirm.

---

       [1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

District appealed the Property's assessment for tax year 2013 to the Chester County Board of Assessment Appeals (Board), which sustained the assessment. District appealed to the trial court, which conducted a *de novo* hearing.[2]

The Property is located at 109 East Uwchlan Avenue in Chester County and consists of 1.706 acres of land, which is improved with a one-story, 10,125-square-foot building and a parking lot with 59 spaces. Since its construction in 2010, at a cost of $2,329,342, the building has been occupied by CVS pursuant to a long-term lease with an initial term of 22 years, followed by ten five-year options. CVS is responsible for paying the real estate taxes on the Property. SPC's interest in the Property is a leased fee.[3] CVS's interest in the Property is a leasehold interest.[4]

The CVS lease is structured under section 467 of the Internal Revenue Code (IRC), 26 U.S.C. §467, with a pre-paid, lump-sum payment of rent, deferred payments, and no current monthly payment. Beginning in 2013 and for the next 10 years, the rent is $0. Thus, the Property is not income-producing.

---

[2] The trial court consolidated the appeal with *Downingtown Area School District v. Chester County Board of Appeals,* No. 2165 C.D. 2014. That case involves the valuation of property occupied by Walgreens.

[3] A "leased fee" is "'[a]n ownership interest held by a landlord with the rights of use and occupancy transferred by the lease to others.'" *Tech One Associates v. Board of Property Assessment, Appeals and Review of Allegheny County*, 53 A.3d 685, 688 n.8 (Pa. 2012) (citation omitted).

[4] "A leasehold interest is '[t]he interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term under certain conditions.'" *Tech One*, 53 A.3d at 689 n.13 (citation omitted).

District presented the testimony of appraiser Patrick F. Noone, who testified as to the three appraisal methods: income, sales, and cost. As to the income approach, Noone testified that he could not make sense of the lease agreement and did not utilize the lease for his appraisal but instead "depended on market derived rents." (N.T., 9/18/14, at 16.) Noone then divided an estimated single year's net operating income by an estimated capitalization rate to arrive at a $4,200,000 value. (*Id.* at 28-29, 34.) As to the sales approach, Noone identified four comparable CVS buildings, arriving at a $415-per-square-foot value, equal to an appraised value of $4,400,000. (*Id.* at 25.) Finally, regarding the cost approach, Noone valued the subject land as vacant, allowing for the cost of construction and depreciation, to arrive at a value of $4,500,000. (*Id.* at 24-25.)

Taxpayers presented the testimony of appraiser Mark H. Shonberg. Under the income approach, Shonberg valued the leased fee, leasehold, and fee simple and arrived at an appraised value of $2,170,000 rounded. (*Id.* at 93, 111-12.) Under the sales approach, Shonberg compared CVS to nine other retail uses, including drugstores. (*Id.* at 128-29.) However, Shonberg ultimately did not arrive at a value under the sales approach. (*Id.* at 130-31.) Finally, under the cost approach, Shonberg identified five retail land sales, two of which were within one mile of the Property, to determine land value. (*Id.* at 132.) He then calculated replacement costs and depreciation and concluded that the Property had a value of $2,220,000 rounded. (*Id.* at 137.)

The trial court stated that in accordance with *Tech One Associates v. Board of Property Assessment, Appeals and Review of Allegheny County,* 53 A.3d

3

685, 703 (Pa. 2012), to determine the market value of property, the leased fee and the leasehold must be considered as a whole. The trial court determined that the income approach to valuation did not aid the court in determining the value of the leased fee. Under the economic realities of the CVS lease, there is no income stream for either the leased fee or the leasehold interest. A purchaser of the leased fee would not view the Property as income-producing because the rent is $0. Moreover, the trial court concluded that neither expert provided the trial court with credible evidence from which it could determine the actual value of the leasehold interest held by CVS.

As to the sales approach, the trial court rejected Noone's comparable of all CVS buildings because an appraiser must consider all uses to which the Property could be used and not just the current use. As to Shonberg's use of the sales approach, the trial court concluded that Shonberg properly concluded that the Property's highest and best use is for general retail and compared it to nine other retail properties. The trial court concluded, however, that Shonberg only developed the sales approach as a test and not as an indicator of value.

Based on the evidence presented, the trial court determined that the cost approach was the most appropriate method for valuing the Property. The trial court credited Shonberg's testimony because Shonberg examined the actual construction costs of the Property and considered replacement costs for single-user retail buildings. This appeal followed.[5]

---

[5] This court's review is limited to determining whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Walnut-Twelve Associates v. Board of Revision of Taxes*, 570 A.2d 619, 622 (Pa. Cmwlth. 1990).

4

Initially, District argues that the trial court erred in determining that the long-term lease significantly diminished the market value of the Property and by relying on that conclusion in rejecting the testimony of District's expert under the income approach. We disagree.

In a tax assessment appeal, the trial court proceeds *de novo*. *Murtagh v. County of Berks*, 715 A.2d 548, 552 (Pa. Cmwlth. 1998). Once the taxing authority admits its assessment into the record, it has made out a *prima facie* case; then the burden shifts to the party challenging the assessment to present sufficient, competent evidence to overcome the *prima facie* case. *Deitch Company v. Board of Property Assessment*, 209 A.2d 397, 402 (Pa. 1965).

In arriving at the actual value of the land under section 402(a) of The General County Assessment Law,[6] all three appraisal methods, cost, income, and comparable sales, must be considered in conjunction with one another. The trial court has the authority to determine which valuation method is the most appropriate and applicable to the property. *Willow Valley Manor, Inc. v. Lancaster County Board of Assessment Appeals*, 810 A.2d 720, 723 (Pa. Cmwlth. 2002).

The trial court observed that in accordance with *Tech One*, 53 A.3d at 703, in determining the market value of property, the leased fee and the leasehold must be considered. In rejecting an analysis under the income approach, the trial court observed that Noone did not consider CVS's leasehold interest. Because

---

[6] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-402(a).

Noone did not take into account CVS's leasehold interest, the trial court did not err in discrediting his testimony.

Next, District argues that the trial court erred in rejecting Noone's testimony under the sales approach to valuation. Noone testified that the best comparables for use in valuing the Property were retail drugstores. Noone identified four sales of comparable CVS drugstores, adjusting for age, location, and other factors, to arrive at a $415-per-square-foot value, equal to an appraised value of $4,200,000. District argues that Noone's testimony was competent and credible and his opinion as to fair market value should have been accepted by the trial court.

As the trial court stated, however, in determining highest and best use, an appraiser should consider not only the current use but all uses. Here, Noone considered only the current use and compared CVS to other CVS-occupied buildings. The trial court concluded that, as testified to by Shonberg, the highest and best use of the Property is general retail, which includes drugstores. Determinations of credibility and evidentiary weight are within the province of the trial court, and we will not disturb those determinations absent an error of law. *RAS Development Corporation v. Fayette County Board of Assessment Appeals*, 704 A.2d 1130, 1137 (Pa. Cmwlth. 1997).

Next, District argues that the trial court erred in precluding District from cross-examining Shonberg on his credibility. District argues that during cross-examination of Shonberg, District sought to use another drugstore appraisal report prepared by Shonberg's firm to impeach Shonberg's credibility. District sought to

6

show that when Shonberg's firm provides testimony for a taxing authority in a tax assessment appeal of a retail drugstore, the firm takes the position that the best comparables for valuing the property are retail drugstores. However, when Shonberg's firm provides expert testimony for a taxpayer, the firm takes the opposite approach and concludes that the best comparables are general retail stores. The trial court, however, after objection by Taxpayers, precluded District from asking any further questions on this matter. (N.T., 9/18/14, at 163-66.)

This court agrees that the trial court properly denied District's attempt to impeach Shonberg by cross-examining him using an appraisal report prepared for a different property and by a different expert who was not present for cross-examination. As the trial court stated: "I am confident that I don't particularly care what someone else did at another time." (*Id.* at 165.) An expert witness cannot bolster his credibility by reading into the record the report of a non-testifying expert who has not been subject to cross-examination. *Cacurak v. St. Francis Medical Center*, 823 A.2d 159, 172-73 (Pa. Super. 2003).

Next, District argues that the trial court erred in rejecting District's valuation and accepting Taxpayers' valuation of the Property by means of the cost approach. Under the cost approach, Noone estimated that the value of the land as vacant was $2,235,000. He also estimated that the cost of construction, less depreciation, was $2,252,193. Thus, the land plus improvements totaled approximately $4,500,000. District argues that Noone's appraisal under this method was consistent with his appraisal under the other two methods. District complains that the trial court did not explain why it found Taxpayers' valuation more credible.

The trial court, however, did explain that it credited Shonberg's assessment because he utilized and examined the actual construction costs of the Property and considered replacement costs for single-user retail buildings. (Trial Court Op., 10/30/14, at 16.)

Finally, District contends that the trial court erred in crediting Shonberg's valuation of $2,220,000, which is several hundred thousand dollars less than the 2001 purchase price of $2,546,495. We observe that the function of the trial court in a tax assessment matter is not to independently value the property, but to weigh the conflicting testimony and values expressed by the experts and, based on the credibility of their opinions, arrive at a valuation. *Gilmour Properties v. Board of Assessment Appeals of Somerset County*, 873 A.2d 64, 66 n.3 (Pa. Cmwlth. 2005). District contends that because Shonberg testified that the value of the Property is less than its purchase price in 2001, the trial court erred in crediting his testimony. District, however, offers no authority for its proposition that a witness must testify that a property has increased in value before such testimony can be credited. The trial court did not abuse its discretion, commit an error of law, or render a decision unsupported by the evidence in determining the assessed value of Taxpayers' Property.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downingtown Area School : 
District, : No. 2182 C.D. 2014
 :
            Appellant : 
 :
       v. : 
 :
Chester County Board of : 
Assessment Appeals and : 
SPC 2001A-CSF-67 LLC : 


O R D E R


AND NOW, this 19<u>th</u> day of <u>January</u>, 2016, we hereby affirm the October 30, 2014, order of the Court of Common Pleas of Chester County.


_____
ROCHELLE S. FRIEDMAN, Senior Judge